JUDGE HERB ROSS (Recalled)

UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF ALASKA
605 West 4th Avenue, Room 138, Anchorage, AK 99501-2253 — (Website: www.akb.uscourts.gov)
Clerk's Office:  907-271-2655 (1-800-859-8059 In-State) — Judge's Fax:  907-271-2692

In re

MARLOW MANOR DOWNTOWN, LLC,

Debtor

Case No. A12-00421-HAR
In Chapter 11

MEMORANDUM DECISION REGARDING
*MOTION TO DETERMINE CLASSIFICATION OF CLAIM PURSUANT TO BANKRUPTCY RULE 3013* [ECF No. 102]

CONTENTS                                                                                               Page

1. SUMMARY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
2. CLASSIFICATION ISSUE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
   2.1. Background . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
   2.2. Analysis . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
3. CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

1. **SUMMARY**- Debtor's Second Amended Plan classifies the claim of Alaska Housing Finance Corp. (AHFC) as Class 4 on a wholly unsecured $1,325,000 promissory note, separate from various other noninsider unsecured claims, which are grouped in Class 6.  AHFC's loan servicer, Wells Fargo,[1] objected to the separate classification under FRBP 3013 .[2]

The classification is improper since the AHFC claim is substantially similar to the separately classified, noninsider unsecured creditors, and there is insufficient business or

---

[1]  Wells Fargo Bank, N.A., as servicing agent for AHFC.

[2]  ECF No. 102.

Page 1 of 13

economic reasons for the separate classification. Rather, the separate classification of the AHFC's claim is a disfavored attempt to manipulate the voting on the plan to meet the confirmation standard of having at least one class of noninsider claims approve the plan.[3]

Since such a classification is not permissible under Ninth Circuit case law, the Second Amended Disclosure Statement is not approved.[4]

## 2. CLASSIFICATION ISSUE-

**2.1. Background**- The historical facts underlying this dispute are not in dispute. They are set out in debtor's Second Amended Disclosure Statement.[5]

To save an historic multi-story building in Anchorage from being razed, Marc Marlow, through his family trust and with others, started on a quest to renovate the building. It was originally to be redesigned for use partly as 100 studio and one-bedroom apartments (floors 5-14 of the building, called condo **Unit A** of McKinley Tower) and partly for 52 units of senior assisted living units (floors 2-4 and parts of the first floor, called condo **Unit B** of McKinley Tower). Through an intricate and innovative structure of financing premised on the preservation of blighted properties, including Municipality of Anchorage tax forgiveness and public funding, the project pencilled out.

Only **Unit B** remains as property of the estate. AHFC funded the takeout financing for the remodeled Unit B to include a first promissory note and deed of trust for $4,125,000, secured by Unit B,[6] and a second promissory note and deed of trust, also secured by Unit B, for $1,325,000.

---

[3] 11 U.S.C. § 1129(a)(10).

[4] It is, therefore, not necessary for the court to rule on the issue of whether the assignee of Northrim Bank's claim, Knud Nielsen, can change Northrim's "no" vote on the Second Amended Plan to "yes" (ECF No. 103), or whether the court should designate Nielsen's vote (ECF No. 109).

[5] *Debtor's Second Amended Disclosure Statement Dated July 7, 2013*. ECF No. 91, at pages 4-7, *II. Background*.

[6] Class 1 under the Second Amended Plan.

MEMORANDUM DECISION                                                                    Page 2 of 13

The $4,125,000 first note is dated January 30, 2007, bears interest at 7.375% and is payable in equal installments of $28,490.35 per month over a 30 year term. This note is provided for in Class 2 of the Second Amended Plan. Since AHFC has indicated it will make a § 1111(b)(2) election for Class 2, it will be treated as wholly secured.

Class 4 contains only the claim on the $1,325,000 second promissory note. It is also dated January 30, 2007, and bears interest at 1.5%. Like the first promissory note, it is also due in 30 years (or, February 1, 2037), but is payable on much more lenient, or at least different, terms. It is payable during the 30 year term in annual installments only out of a percentage of "available cash flow," pursuant to a formula in the loan documents. Debtor has never had to make annual installment payments on the second promissory note because it never earned enough for payments to kick in. There is, however, a balloon payment for any unpaid balance due on February 1, 2037.

The second promissory note provides that an event of a default spelled out in the second loan agreement can accelerate the second promissory note. The second loan agreement also provides that *an event of default under the <u>first loan agreement</u>*, if not cured, *can be declared to be a default under the terms of the <u>second promissory note</u>*. This could lead to acceleration of the second note.[7] AHFC declared a default under the first promissory note, after various forbearances and waivers were extended to debtor. Debtor has acknowledged the default of the first promissory note.[8] I am unsure AHFC declared a default under the second promissory note, but it was entitled to have done so.

The default occurred due to a series of unfortunate economic events, principally (in debtor's view) because the State of Alaska would not commit to providing Medicaid funding for

---

[7] Second Note (ECF No. 114-1, pages 1-2) and Second Loan Agreement (ECF No. 114-2, Article V, Sec. 5.1(n), at page 29 and Sec. 5.2(a), at page 32).

[8] March 21, 2011 letter from Marc Marlow to Michelle Boutin, Wells Fargo's attorney, acknowledging the default in the first loan. ECF No. 21-9 (Exhibit I) to Wells Fargo's motion for relief from stay.

MEMORANDUM DECISION

subsidized senior assisted living at the levels debtor had projected in planning for the project. So, the senior assisted living model had to be scrapped. Structural features of Unit B made it hard to modify the space for another use. The debtor nonetheless redesigned the space, after AHFC waived the requirement that Unit B be used for assisted living,[9] to short term rental units to cater to such renters as transient airline personnel and North Slope workers.

Long story short, financing that would once, on paper, have paid off the combined $5,450,000 debt to AHFC, is now valued at $2,700,000, more or less.[10] Not only is the first promissory note under water by more than several million dollars, the second promissory note is completely unsecured.

Marc Marlow is a co-maker of both promissory notes.[11] AHFC contends that Mr. Marlow is not solvent because of many recent large unpaid judgments against him. Debtor has not contested this claim of insolvency, and Mr. Marlow's testimony at the hearings on the classification motion on October 4, 2013 confirms it.

Into this scenario, debtor proposed a Second Amended Plan, dividing the claims of creditors who are not insiders into two classes:[12]

- "<u>Class 4. – AHFC's Subordinated Loan</u>. This claim shall be allowed as an unsecured claim in the amount of $250,000 and shall be paid without interest in quarterly installments of $10,000 beginning on October 1, 2023. This Class is Impaired."

- "<u>Class 6 – Unsecured Claims</u>, Except Those of AHFC and the Debtor's Affiliates. No interest shall be paid on account of the Allowed Claims in this Class. The holders of Allowed Class 6 Claims will receive a distribution of $20,000 on the Effective Date of the Plan, prorated in proportion to the allowed claims in this Class, and shall further receive prorated payments of $10,000 per calendar quarter commencing October 1, 2013, for a period of five years, with the final payment to be made July 1, 2018."

---

[9] ECF No. 105, page 3.

[10] *Second Amended Disclosure Statement*. ECF No. 91, pages 8-9.

[11] ECF No. 21-2 (the First Promissory Note) and ECF No. 114-1 (the Second Promissory Note).

[12] ECF No. 90, pages 7-8.

MEMORANDUM DECISION                                                                    Page 4 of 13

The claimants in Class 6 are generally trade creditors, plus a $575,000 unsecured debt on a short term promissory note due to Northrim Bank.[13] The Northrim note was bought by Knud Nielsen, a business associate of Marc Marlow, who would change Northrim's "no" vote on the plan to a "yes." The debtor anticipates it would be able to obtain the consenting vote of Class 6.

AHFC contends that the unsecured claims in both classes are substantially similar, and there is no principled business or economic reason to treat them differently. Rather, AHFC says, this treatment is a transparent attempt to get a consenting class by gerrymandering.[14]

The debtor says the separate classification is permissible because the claims are not substantially similar, but even if they are, there are valid business and economic reasons why it should be allowed.[15] Principally, the debtor argues that the Class 4 second note claim has usual terms; it is payable only out of excess cash flow. Class 6 claims are generally trade creditors, except for a short term Northrim promissory note. The nub of debtor's argument is:

> The second note is not ordinary debt; ordinary debt is due on demand or on a definite payment schedule without regard to the borrower's ability to pay. The creditors in Class 6 are all trade creditors, except for the Northrim Bank claim, which is on a short term promissory note that matured according to its original terms. The second AHFC note, in contrast, is only due if there is money to pay it. As such, the second note has the character of a redeemable preferred stock or similar equity investment which receives a dividend only if the issuer has the ability to pay [footnotes omitted].[16]

To support the argument that Class 4 is more like equity than debt, debtor cites several tax cases which I will discuss below.

---

[13] ECF No. 103, debtor's motion to change Northrim's "no" vote on the Second Amended Plan to "yes," after the Northrim claim had been purchased by Knud Nielsen, a business associate of Marc Marlow.

[14] *Objection to Confirmation of Debtor's Second Amended Plan of Reorganization*, ECF No. 97, pages 4-7 (*V. The Plan Improperly Classifies AHFC's Class 4 Unsecured Claim*) and *Reply to Opposition to Motion Regarding Separate Classification of AHFC's Note Secured By Second Deed of Trust*, ECF No. 110.

[15] *Opposition to Motion Regarding Separate Classification of AHFC's Note Secured By Second Deed of Trust.* ECF No. 105.

[16] ECF No. 105, page 6.

The debtor has also alluded to the fact that the State of Alaska agency governing Medicaid subsidies backed out on a commitment or suggestion that it would approve funding at about $127 per day per unit, but only offered a $99 per day subsidy.[17]  Debtor suggests that AHFC should be conflated with this agency.  I am not sure that debtor is suggesting this as a reason for separate classification, but if so, I will address it in the following Analysis section.

**2.2. <u>Analysis</u>**- Wells Fargo, as servicer of AHFC's debt, filed a motion under FRBP 3013, *Classification of Claims and Interests*:

> For the purposes of the plan and its acceptance, the court may, on motion after hearing on notice as the court may direct, determine classes of creditors and equity security holders pursuant to §§1122, 1222(b)(1), and 1322(b)(1) of the Code.

Section 1122 of the Bankruptcy Code governs classification of claims and interests:

> (a) Except as provided in subsection (b) of this section, a plan may place a claim or an interest in a particular class only if such claim or interest is substantially similar to the other claims or interests of such class.
>
> (b) A plan may designate a separate class of claims consisting only of every unsecured claim that is less than or reduced to an amount that the court approves as reasonable and necessary for administrative convenience.

Only claims which are substantially similar can be placed in the *same* class.  Claims that are substantially similar can, however, be placed in *different* classes, but subject to some court imposed restrictions.  Ninth Circuit circuit court and BAP cases flesh out these concepts.

The first is *In re Johnston*,[18] a circuit case.  The court decided "the proper standard when an unsecured claim may be classified separately from other unsecured claims under 11 U.S.C. § 1122(a). . ."[19]  The court affirmed a separate classification of the claim of a creditor, Steelcase, from other unsecured creditors.  While the treatment of the other classes of unsecured claims is not described in detail, their treatment differed from that of Steelcase.  Steelcase's unsecured

---

[17] From the Second Amended Disclosure Statement.  ECF 91, page 6.

[18] *In re Johnston*, 21 F3d 323 (9th Cir. 1994).

[19] *Id*, at 325.

MEMORANDUM DECISION                                                                Page 6 of 13

claim was contested in a pending litigation, and alleged to be subject to a complete offset. It was also partially secured by the assets of a nondebtor company which was both the primary obligor of the Steelcase claim and was related to debtor Johnston, . If Steelcase was successful in the litigation, it was to be paid in full within 120 days under the terms of the confirmed plan.

The court affirmed the separate classification of Steelcase's unsecured claim. The court held that a bankruptcy court has broad discretion in deciding whether a claim is substantially similar for classification purposes.[20] The court said:

> Whether the issue on appeal is denial of separate classification or approval of separate classification, the question resolved by the bankruptcy court is the same: are the claims substantially similar? To resolve that question, bankruptcy court judges must evaluate the nature of each claim, i.e., the kind, species, or character of each category of claims. *Cf. In re Los Angeles Land and Invs., Ltd.,* 282 F.Supp. 448, 454 (D.Haw.1968) (interpreting analogous provision of former Bankruptcy Act to require consideration of "nature" of claim not as that word is intended in its "technical sense in law but [as it] is used in its ordinary common vernacular"), *aff'd*, 447 F.2d 1366, 1367 (9th Cir.1971). We held in *In re Commercial Western*, 761 F.2d at 1334, that whether a note and deed of trust securing one claim is different from a note and deed of trust securing another claim is a question of fact. Whether a claim is secured, partially secured, or unsecured, is, in our view, also a question of fact. So, too, are the questions of whether one claimant alone holds a secured or partially secured claim; whether a particular claim [of many] is the subject of litigation; and whether pending litigation could result in full payment of the claim in issue prior to the time that other claims of other creditors are paid.[21]

Applying the law to the facts, the *Johnston* court concluded:

> Steelcase does not dispute that its claim, unlike all others, is partially secured by collateral of COS, the primary obligor. Steelcase must also concede that it, unlike all other unsecured creditors, is embroiled in litigation with Johnston, and that its claim thus may be offset or exceeded by Johnston's own claim against Steelcase. Steelcase cannot deny the possibility, if not necessarily the probability, that, if successful in the litigation, it could be paid in full before all other unsecured creditors. Under these circumstances, the bankruptcy court was not clearly erroneous in concluding that

---

[20] *Id*, at 327.

[21] *Id*, at 327.

MEMORANDUM DECISION                                                                                              Page 7 of 13

Steelcase's claim is distinguishable from Class 19, Class 20, and Class 22 claims.[22]

So, the "possibility" of success in the litigation and the existence of partial non-estate collateral was enough to sanction separate classification.

The holding of *Johnston* was relied on in the 9th Circuit BAP case, *In re LOOP 76, LLC*.[23] This was a single asset real estate case with a large unsecured deficiency claim and a very small amount of unsecured trade claims.

The creditor in LOOP cried "gerrymander." The debtor said there were differences in the creditor's claim from other unsecured claimants justifying separate classification:

> Moreover, Loop 76 contended that Wells Fargo's deficiency claim was not substantially similar to the unsecured trade claims, and therefore required separate classification, because:(1) Wells Fargo was partially secured; (2) Wells Fargo was embroiled in litigation with the guarantors, who were a third-party source of payment on the debt; and (3) if Wells Fargo was successful in that litigation, it might be paid in full before other creditors. In other words, argued Loop 76, the legal character of the claims mandated separate classification.

The bankruptcy court held that the third-party source of repayment made the deficiency claim dissimilar from other claimants that did not have such an external source.[24] And, the BAP affirmed:

> The threshold question for the bankruptcy court when applying § 1122(a) is to determine whether the claims are "substantially similar." The Code is silent on how to ascertain whether claims are "substantially similar." The Ninth Circuit has determined that the bankruptcy judge "must evaluate the nature of each claim, i.e., the kind, species, or character of each category of claims." *In re Johnston*, 21 F.3d at 327 (citing *In re Los Angeles Land & Invs.*, Ltd., 282 F.Supp. 448, 453-54 (D.Haw.1968), *aff'd*, 447 F.2d 1366, 1367 (9th Cir.1971) (hereinafter "*Los Angeles Land*")). Because § 1122(a) mandates that dissimilar claims may not be placed into the same class, if the bankruptcy court determines that the claims are not substantially similar, the inquiry ends there.

---

[22] *Id* at 329.

[23] *In re LOOP 76, LLC*, 465 B.R. 525 (9th Cir. BAP 2012).

[24] *Id* at 523-24.

MEMORANDUM DECISION

However, if the claims are substantially similar, the plan may place such claims in different classes if the debtor can show a business or economic justification for doing so. *Barakat v. Life Ins. Co. of Va. (In re Barakat),* 99 F.3d 1520, 1526 (9th Cir.1996). Absent a business or economic justification, it is not enough to justify separate classification solely on the basis of the unsecured creditor's right to make an § 1111(b) election. Id. at 1526 (citing *Oxford Life Ins. Co. v. Tucson Self-Storage, Inc. (In re Tucson Self-Storage, Inc.),* 166 B.R. 892 (9th Cir. BAP 1994)) (separate classification of unsecured claims solely on their right to make an § 1111(b) election is impermissible and violates § 1122(a)). Furthermore, a court must not approve a plan placing similar claims differently solely to gerrymander an affirmative vote on the reorganization plan. Id. at 1525 (citing *Phoenix Mut. Life Ins. Co. v. Greystone III Joint Venture (In re Greystone III Joint Venture),* 995 F.2d 1274, 1279 (5th Cir.1992), *cert. denied,* 113 S.Ct. 72, 506 U.S. 821, 822, 121 L.Ed.2d 37 (1992)).

Notably, many courts have conflated the two-prong analysis required for classifying claims under § 1122(a), often glossing over the first prong of determining whether the claims are substantially similar, and proceeding to the second prong to determine whether gerrymandering has occurred or whether the plan proponent showed a business or economic justification for separately classifying similar claims. This explains, as the bankruptcy court phrased it, the "paucity of case law defining what constitutes either similarity or substantial similarity of claims." *In re LOOP 76, LLC,* 442 B.R. at 716. *In re Johnston* is the only Ninth Circuit case to squarely address this issue since the enactment of the Code in 1978.[25]

In short, the BAP followed *Johnston* and distinguished *Barakat*:

> Accordingly, we reject Wells Fargo's argument that a third-party guarantor does not render its deficiency claim dissimilar from other unsecured claims. Its argument is based on case law inconsistent with *In re Johnston's* holding that whether the claim is substantially similar does not rest entirely on how it relates "to the assets of the debtor."
>
> We also reject Wells Fargo's argument that the bankruptcy court's holding is inconsistent with *In re Johnston* and *In re Barakat* because neither case expressly held that a third-party source of payment made the claim at issue dissimilar to the other unsecured claims. As for *In re Johnston*, the third-party source for recovery was collateral, not money. Presumably, the court's lack of any reference to a cash source was because it was not a fact in the case. Furthermore, the Ninth Circuit is not in the business of issuing advisory opinions on issues not raised before it. In *In re Barakat*, the court had no reason to address a third-party source of payment because none existed.[footnote omitted][26]

---

[25] *Id*, at 536-37.

[26] *In re LOOP 76, LLC,* at 540-41.

MEMORANDUM DECISION

*In re Barakat*[27] was decided several years after *Johnston*. It involved an apartment building worth $4,000,000, encumbered by a claim of $4,600,000. The debtor's plan proposed to classify the unsecured $600,000 deficiency claim separately from several other classes of unsecured creditors, including a class of trade debt. While recognizing the possibility of classifying similar claims in different classes, the court also said that there are limits to that right. One of the limits is that separate classification should not be condoned "in order to gerrymander an affirmative vote on a reorganization plan." A second is that, if claims are substantially similar, there must be a valid business or economic reason for separate classification. It approved a BAP decision saying that the right to make a § 1111(b)(2) election was not such a valid reason.[28]

I conclude that the classification decision in this case is controlled by *Barakat*. While the claim has a co-debtor, Marc Marlow, he is apparently not personally solvent and has many unpaid money judgments against him. He is not like the creditor in *Johnston*, which had viable guarantors to collect from, at least in part. Nor is there any other collateral than the real and personal property securing the two loans owed to AHFC, valued at no more than $2,700,000.

The claim on the second promissory note is very similar to a garden variety unsecured claim, notwithstanding its "easy terms." 11 USC § 502(b)(1) makes the claim presently allowable despite being an unmatured claim, the balance of which is due in 2037. Also, under the terms of the Second Loan Agreement, the second promissory note can be accelerated due to the default under the first promissory note.[29] And, even if second promissory note had been nonrecourse (which it is not), in chapter 11 it is treated as a recourse claim.[30]

---

[27] *In re Barakat*, 99 F.3d 1520 (9th Cir. 1996).

[28] *Id* at 1527, citing *In re Tucson Self-Storage, Inc.*, 166 B.R. 892, 897 (9th Cir. BAP 1994).

[29] Second Loan Agreement (ECF No. 114-2, Article V, Sec. 5.2(a), at page 32.

[30] 11 U.S.C. § 1111(b)(2).

Debtor has also suggested that AHFC should be treated differently than other unsecured creditors because it is part of, or close to, a state agency which, in a sense, lead debtor down a primrose path into believing its assisted living proposal for Unit B would receive an adequate Medicaid subsidy to make the numbers work.  Debtor argues that AHFC should bear some of the blame for the failure of the initial plan and that this justifies a separate classification.

Other than making this contention or suggestion, debtor has not followed through with sufficient evidence, facts or legal analysis to support it.  A cursory look at the Alaskan Statutes governing AHFC[31] shows it is not the same as the state agency governing Medicaid subsidies.  AHFC is a public corporation,[32] and unless debtor can connect the dots to the Medicaid agency, I must conclude that the connection is not closely enough related to justify tagging AHFC with alleged malfeasance by a completely distinct state agency.  *Both* the debtor and AHFC had the rug pulled out from under them due to the change in projected Medicaid subsidies.

Finally, debtor argues that the second note is akin to an equity contribution, thus justifying its separate Class 4 status from other unsecured claims in Class 6.[33]  To support this argument, debtor cites several tax cases in which the courts were concerned with determining whether certain payments to a corporation should be treated as capital contributions as opposed to loans.[34]  Those courts used a number of factors to make this determination.  *Roth Steel* said the factors are:

> This court has identified a number of factors to be used in making the capital contribution versus loan determination: (1) the names given to the instruments, if any, evidencing the indebtedness; (2) the presence or absence of a fixed maturity date and schedule of payments; (3) the presence or absence of a fixed rate of interest and interest payments; (4) the source of

---

[31] AS 18.55.

[32] *Bridges v. Alaska Housing Authority*, 375 P.2d 696, 702 (Alaska 1962).

[33] *Opposition to Motion Regarding Separate Classification of AHFC's Note Secured By Second Deed of Trust*.  ECF No. 105, pages 6-10.

[34] *Roth Steel Tube Co. v. CIR*, 800 F2d 625 (6th Cir 1984) and *Indmar v. CIR*, 444 F3d 771 (6th Cir 2006).

MEMORANDUM DECISION

repayments; (5) the adequacy or inadequacy of capitalization; (6) the identity of interest between the creditor and the stockholder; (7) the security, if any, for the advances; (8) the corporation's ability to obtain financing from outside lending institutions; (9) the extent to which the advances were subordinated to the claims of outside creditors; (10) the extent to which the advances were used to acquire capital assets; and (11) the presence or absence of a sinking fund to provide repayments. [citations omitted][35]

There appears to be little similarity between those tax cases and the classification issue in this case. Given the public nature and mission of AHFC, and the substantial similarities in the structure of the first and second loan agreements and promissory notes – notwithstanding the difference in the payment terms of the second promissory note – the second promissory note is undeniably an unsecured claim and not a capital contribution.

3. **CONCLUSION**- The separate classification of Class 4 and Class 6 is not justified under *Barakat*. The separate classification is disapproved. The Second Amended Disclosure Statement, which is based on this classification of claims, is therefore also not approved.

This decision makes it unnecessary for the court to decide whether Knud Nielsen, assignee of Northrim Bank's Proof of Claim No. 3-1 can change its vote to an acceptance of the plan[36] or AHFC's motion to designate that vote.[37]

I will enter an order adopting this decision and giving the debtor until **Tuesday, November 12, 2013** to file an amended disclosure statement and plan.

DATED: October 9, 2013

/s/ Herb Ross
HERB ROSS
U.S. Bankruptcy Judge

Serve :

---

[35] *Roth Steel Tube Co. v. CIR*, 800 F2d at 630.

[36] Debtor's *Motion Pursuant to Rule 3018(a) to Change Vote on Second Amended Plan*, ECF No. 103.

[37] AHFC's *Motion to Designate*, ECF No. 109.

MEMORANDUM DECISION                                                                Page 12 of 13

David Bundy, Esq., for debtor
Gary Sleeper, Esq., for Wells Fargo, servicer for AHFC
William Courshon, Attorney for the US Trustee