JUDGE HERB ROSS (Recalled)

UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF ALASKA
605 West 4th Avenue, Room 138, Anchorage, AK 99501-2253 — (Website: www.akb.uscourts.gov)
Clerk's Office:  907-271-2655 (1-800-859-8059 In-State) — Judge's Fax:  907-271-2692

| In re | Case No. A12-00421-HAR |
|---|---|
| MARLOW MANOR DOWNTOWN, LLC, | In Chapter 11 |
| Debtor | MEMORANDUM DECISION REGARDING MISCLASSIFICATION OF CLASSES 3 AND 4  IN DEBTOR'S THIRD AMENDED PLAN |

Contents                                                                                                   Page

1. INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

2. THE ORIGINAL FIRST AND SECOND LOANS AND THEIR AMENDMENTS  . . . . . . . . . . . 3

3. CLASSIFICATION OF AHFC'S CLAIMS IN THE SECOND AMENDED PLAN . . . . . . . . . . . 4

4. CLASSIFICATION OF AHFC'S CLAIMS IN THE THIRD AMENDED PLAN  . . . . . . . . . . . . 5

5. CLASSES 3 AND 4 IN THE THIRD AMENDED PLAN ARE IMPAIRED . . . . . . . . . . . . . . . . 5

6. CLASSES 3 AND 4 ARE IMPROPERLY CLASSIFIED . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

7. CONCLUDING COMMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

1. INTRODUCTION- This memorandum is to better state the reasoning from my *Order Granting AHFC's Motion to Determine That Classes 3 and 4 in the Third Amended Plan are Improper [ECF No. 132]*.[1]  At the March 5, 2014 hearing on AHFC's *Motion to Determine Classification of Claim Pursuant to Bankruptcy Rule 3013*,[2] I made an oral ruling supplemented by

---

[1]  ECF No. 149.

[2]  ECF No. 132.

explanatory notes and some bar charts in the *Proceeding Memorandum*.[3]  My discussion was terse and truncated because it was addressed to AHFC and the debtor, who did not need a fuller explanation to understand the basis of my ruling.  Since the order is being appealed,[4] a fuller, more literate exposition will help the appellate court.

In summary, I ruled that Class 3 (a $1 million portion of the $4.125 million **First Loan** and its collateral) and Class 4 (the junior $1.325 million **Second Loan**, with the same collateral) were improperly classified as ***secured and unimpaired***, when they were both ***unsecured and impaired***. Class 2 (the other $3.125 million portion of the First Loan) is listed as ***secured*** up to the full value of the collateral (which debtor has probably overvalued in the plan) and is classified by debtor as being ***impaired***.  As a simple mathematical proposition, Classes 3 and 4 cannot be secured under 11 USC § 506(a)(1), since Class 2 uses up all the collateral value.  They are, therefore, improperly classified as ***unimpaired*** because the rights of AHFC in each class is modified.

Additionally, the debtor claims that the payment terms of Classes 3 and 4 are left unchanged, but the *Third Amended Chapter 11 Plan*[5] does make changes in AHFC's contract rights which *ipso facto* are an impairment.[6]

Finally, the court has previously ruled that separately classifying AHFC's general unsecured claim on its Second Loan (in truth, a deficiency claim) separately from other general unsecured creditors in the debtor's *Second Amended Chapter 11 Plan*[7] was improper gerrymandering for the purpose of obtaining the affirmative vote of at least one class, so it could

---

[3] ECF No. 147.

[4] ECF No. 153.

[5] ECF No. 120.

[6] ECF No. 133, AHFC's *Memorandum in Support of Motion to Determine Classification of Claim Pursuant to Bankruptcy Rule 3013*, at pages 7-9, October 9, 2013.

[7] ECF No. 90.

MEMORANDUM DECISION REGARDING
MISCLASSIFICATION OF CLASSES 3 AND 4
IN DEBTOR'S THIRD AMENDED PLAN                                                                                          Page 2 of 8

possibly confirm a cramdown plan.[8]  Under the same reasoning as my October 9, 2013 decision, there are not sufficient business or economic reasons to classify Classes 3 and 4 in the third amended plan separately from the other general unsecured creditors, who are in Class 6.

    **2. THE ORIGINAL FIRST AND SECOND LOANS AND THEIR AMENDMENTS**- AHFC financed the debtor's project – originally to provide elder housing and also restore a blighted building in Anchorage – with two notes, both secured by deeds of trust and security agreements on the same collateral:[9]

- **First Loan**: a senior promissory note for $4.125 million, dated January 30, 2007. The original terms called for interest at 7.375% per year in level monthly payments of $28,490.35 over a 30 year term (or, to February 1, 2037);[10] and,

- **Second Loan**- a junior promissory note for $1.325 million, dated January 30, 2007. The original terms called for interest at 1.5% per year in annual installments of 40% of "available cash flow," as defined in the note, with all remaining unpaid sums due by February 1, 2037.[11]

The project fell on hard times and there was insufficient income for the $1.325 million Second Loan to even come into payment status before 2037.  It became a "net 30 years" term.  AHFC and the debtor entered into a number of amendments to ease the burden on the debtor, and finally a modification agreement in April 2009[12] that changed the terms of the two loans:

- **Modified First Loan**:  The payment terms of the $4.125 million senior promissory note, then having a principal balance of $4,061,612.17, were modified to carve out a $1 million principal portion, and provide payment on two tracks as follows:

---

[8] ECF No. 117, the order, and ECF No. 116, *Memorandum Decision Regarding Motion to Determine Classification of Claim Pursuant to Bankruptcy Rule 3013 [ECF No. 102].*

[9] *See*, the Background discussion in the memorandum decision, ECF 116.

[10] A copy of the First Promissory Note is at ECF 21-2, pages 1-4, as part of AHFC's motion for relief from stay.

[11] A copy of the Second Promissory Note is at ECF 114-1, pages 1-4.

[12] First Modification Agreement, April 20, 2009.  ECF 133-1.

MEMORANDUM DECISION REGARDING
MISCLASSIFICATION OF CLASSES 3 AND 4
IN DEBTOR'S THIRD AMENDED PLAN          Page 3 of 8

- – <u>Track 1</u>- On the $3,061,612.17 portion, payments were reduced from $28,490.35 per month to $21,627.51 per month, 7.375% annual interest, still in level monthly payments, to fully amortize by February 1, 2037; and,

- – <u>Track 2</u>- On the $1 million portion (which we have called "the carve-out" in these proceedings), interest remained at 7.375% annual, but only payable out of 30% of "available cash flow" as redefined in the modification agreement. Any unpaid balance was due on February 1, 2037. The modification did not make the $1 million carve-out junior to the $3 million part of the first loan, but merely describes two different criteria for payment.

- ■ **Modifed Second Loan**- The payment terms of the junior $1.325 million promissory note were modified to require an annual payment of 70% of "available cash flow," as redefined in the modification agreement. The interest remained at 1.5% annual. A balloon payment was still due on February 1, 2037.

The practical effect of the modification agreement was to reduce the monthly loan payments by a little less than $7,000 per month.

     3. <u>CLASSIFICATION OF AHFC'S CLAIMS IN THE SECOND AMENDED PLAN</u>- In the second amended plan AHFC's claim on the $4.125 million First Loan was treated as fully secured based on AHFC's election to be treated as fully secured under 11 USC § 1111(b)(2). Debtor classified AHFC's claim on the $1.325 million Second Loan in Class 4 as a general unsecured claim for $250,000 with quarterly installments of $10,000 separately from other general unsecured creditors.

     The other general unsecured creditors were put in Class 6 and they were to receive $20,000 per quarter for five years (or, $400,000 total).

     The back story to these classifications is that debtor hoped that it could get the affirmative vote of Class 6, as required by § 1129(b) to having a shot at cramdown. That is, if AHFC's deficiency claim from Class 4 had, instead, been included with the other unsecured general unsecured creditors, debtor would not have been able to get the acceptance of at least one consenting class under § 1129(a)(8) if AHFC chose to vote against the plan. It could have blocked the plan.

MEMORANDUM DECISION REGARDING
MISCLASSIFICATION OF CLASSES 3 AND 4
IN DEBTOR'S THIRD AMENDED PLAN                                                                                    Page 4 of 8

I ruled that the separate classification of the $1.325 million Second Loan was improper:[13]

> The classification is improper since the AHFC claim is substantially similar to the separately classified, noninsider unsecured creditors, and there is insufficient business or economic reasons for the separate classification. Rather, the separate classification of the AHFC's claim is a disfavored attempt to manipulate the voting on the plan to meet the confirmation standard of having at least one class of noninsider claims approve the plan. [footnote omitted]

**4. CLASSIFICATION OF AHFC'S CLAIMS IN THE THIRD AMENDED PLAN**- In its Third Amended Chapter 11 Plan, the debtor proposes to classify AHFC's various claims as follows:[14]

- Class 2 - Secured Claim of AHFC- A secured claim for $3.125 million, with interest at 5.75%, and payments in monthly installments (after a $30,000 payment on the effective date), increasing at various intervals to June 1, 2037 (this apparently represents the $3 million portion of the First Promissory Note, as defined by the modification agreement). Debtor stated that this is an *secured, impaired* claim. Parenthetically, the $3.125 million valuation is probably hundreds of thousands of dollars more than the collateral's true value;

- Class 3- This is the $1,000,000 carve-out from the AHFC First Promissory Note. Debtor boldly labels this as a *secured* claim and offers to pay it according to its terms under the modification agreement, arguing that this makes it *unimpaired* under 11 USC § 1124 and thus presumed to have accepted the third amended plan pursuant to § 1126(f); and,

- Class 4- This claim represents the AHFC $1.325 million Second Loan. Again, debtor also labels this as a *secured* claim and offers to pay it according to its terms, arguing that this makes it *unimpaired* under 11 USC § 1124 and thus presumed to have accepted the third amended plan pursuant to § 1126(f).

**5. CLASSES 3 AND 4 IN THE THIRD AMENDED PLAN ARE IMPAIRED**- Debtor's argument that its Class 3 and 4 classifications are *unimpaired* is based on the premise that AHFC would be getting exactly the same payments it would be entitled to outside bankruptcy – i.e., most likely, nothing until February 1, 2037 – because under the terms of the modification

---

[13] ECF No. 116, page 1-2.

[14] ECF No 120.

MEMORANDUM DECISION REGARDING
MISCLASSIFICATION OF CLASSES 3 AND 4
IN DEBTOR'S THIRD AMENDED PLAN                                                                Page 5 of 8

agreement it is unlikely that the debtor will actually be required to make any payments until the balloon payments are due in 2037 due to the low rental income anticipated from of the property.

It is incongruous to classify these claims as "secured" when the debtor acknowledges that secured Class 2 (the $3.125 million part of the First Promissory Note) eats up all the collateral value available to secure Classes 3 and 4.

11 USC § 1124 defines what constitutes the impairment of claims in a chapter 11 plan. Either the plan leaves the claimant's rights unaffected, or, if they are in default, allows the default to be cured under carefully prescribed terms. Debtor's third amended plan attempts to create two claims – Classes 3 and 4 – that are labeled as *unimpaired* and *secured* by ignoring the definition of a secured claim in § 506(a)(1) and impairment in § 1124. Sec. 506(a)(1) provides in relevant part:

> An allowed claim of a creditor secured by a lien on property in which the estate has an interest, ···, is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property, ···, and is an unsecured claim to the extent that the value of such creditor's interest or the amount so subject to setoff is less than the amount of such allowed claim. ···.

At oral argument, AHFC said it did not intend to take the § 1111(b)(2) election for Class 2 in the third amended plan and wanted the vote that was available for the undersecured portion of the First Promissory Note and the full deficiency claim for the Second Promissory Note.

In its third amended disclosure statement debtor states: "As of the Petition Date, AHFC asserted a claim of approximately $4.4 million. As an **undersecured** claimant, it was not entitled to accrue interest, fees or other charges as part of its claim pursuant to § 506(b) of the Code [emphasis added]."[15] This is an acknowledgment that the value of the collateral is all used up securing Class 2, which is only a 75% of the entire amount owed on the $4.125 million First Promissory Note. There is nothing left to secure Classes 3 and 4, so they are unsecured under § 506(a)(1).

---

[15] ECF No. 121, page 11.

MEMORANDUM DECISION REGARDING
MISCLASSIFICATION OF CLASSES 3 AND 4
IN DEBTOR'S THIRD AMENDED PLAN                                                Page 6 of 8

The classification of Classes 3 and 4 as secured takes liberties with § 506(a)(1) and AHFC's rights to vote its unsecured claims. The case law supports this conclusion. In <u>Tucson Self-Storage</u>, a 9th Circuit BAP case, the BAP said that the option of an undersecured creditor to be treated as fully secured under § 1111(b)(2) belongs to a creditor, not the debtor. Several creditors were listed as unsecured in <u>Tucson Self-Storage</u>, but in separate unsecured classes from the general unsecured creditors – as opposed to being arbitrarily called "secured" as in our case – but, the underlying principle still holds: the choice to be treated as fully secured is the creditor's, not the debtor's.[16]

More factually analogous to our case is <u>Birdneck Apartment Associates</u>, an Eastern District of Virginia bankruptcy court decision. The debtor proposed to treat an undersecured creditor as fully secured, over the creditor's objection. The undersecured creditor did not wish to make the § 1111(b)(2) election. The court concluded:

> The issue thus presented is whether the debtor can force an undersecured creditor who has not made a § 1111(b)(2) election to nevertheless be treated as fully secured and thereby defeat the creditor's ability to vote the undersecured portion of its claim with other unsecured and impaired creditors. [footnote omitted]
>
> . . .
>
> In essence, the debtor is attempting to "force" Potomac's § 1111(b)(2) election. If the 1111(b)(2) election is to maintain its intended character as a creditor remedy, debtors cannot be permitted to "force" the election against a creditor's interest by artificially classifying their claim as fully secured. In my view such a tactic is not supported by the letter or spirit of section 1111(b)(2).[17]

**6. CLASSES 3 AND 4 ARE IMPROPERLY CLASSIFIED**- I have previously ruled that the general unsecured $1.35 million Second Loan cannot, under Ninth Circuit precedent, be classified

---

[16] <u>In re Tucson Self-Storage, Inc.</u>, 166 B.R. 892, 897 (9th Cir. BAP 1994).

[17] <u>In re Birdneck Apartment Associates, II, L.P.</u>, 156 B.R. 499, 507 (Bankr. E.D. Va. 1993).

MEMORANDUM DECISION REGARDING
MISCLASSIFICATION OF CLASSES 3 AND 4
IN DEBTOR'S THIRD AMENDED PLAN                                                      Page 7 of 8

1   separately from other general unsecured creditors.[18] The third amended plan cannot avoid this

2   ruling by disguising the $1.325 million Second Loan as a secured, unimpaired claim. This

3   reasoning applies in spades to the $1 million carve-out.

4         AHFC states other reasons why the proposed Class 3 and 4 classifications are improper.[19]

5         Bottom line: Classes 3 and 4 are improperly classified as *secured and unimpaired* in the

6   third amended plan; they must be classified as *unsecured and impaired*. They belong in Class 6

7   for the reasons stated in my prior classification ruling.

8         **7. CONCLUDING COMMENT**- From the beginning of this case, I have felt that AHFC

9   could probably maximize its recovery by negotiating a reasonable settlement with the debtor or

10   allowing the debtor to buy out the claims at a realistic value. This suggested resolution does not

11   appear to have much traction with AHFC and its reasons may be justified. I think the parties are

12   not too far apart on the value of this unusual piece of real property is. As a mediator, I wish I

13   could understand the true interests of the parties – this is a situation that cries for a settlement,

14   not litigation.

15
        DATED: March 24, 2014
16

17                                /s/ Herb Ross
                               HERB ROSS
18                            U.S. Bankruptcy Judge

19

  Serve :
20   David Bundy, Esq., for debtor
  Gary Sleeper, Esq., for Wells Fargo, servicer for AHFC
21   William Courshon, Attorney for the US Trustee

22

23

---

24
    [18] Order Regarding *Motion to Determine Classification of Claim Pursuant to Bankruptcy Rule 3013*
25   [ECF No. 102] and Related Matters. ECF No. 117, filed October 9, 2013.

26     [19] *See*, AHFC's briefing at ECF Nos. 133 and 141.

27   MEMORANDUM DECISION REGARDING
  MISCLASSIFICATION OF CLASSES 3 AND 4
28   IN DEBTOR'S THIRD AMENDED PLAN                                                  Page 8 of 8